(C. D. 1188)

F. L. KRAEMER & CO. *v.* UNITED STATES

United States Customs Court, First Division

(Decided October 27, 1949)

*Eugene R. Pickrell* (*Michael Stramiello, Jr.*, of counsel) for the plaintiff.
*David N. Edelstein*, Assistant Attorney General (*John J. McDermott*, special attorney), for the defendant.

Before OLIVER, COLE, and MOLLISON, Judges

COLE, Judge: This case concerns 51 bales of merchandise described on the invoice as "woolen rags, new coloured golfers." The collector, acting under valid regulations, Customs Regulations of 1943, section 14.1, ordered 1 bale for official examination, which revealed a content of 334 pounds of wool rags and 46 pounds of wool thread or yarn waste. Classification of the two classes of merchandise, found in said bale, was made under the respective provisions therefor in paragraph 1105 (a) of the Tariff Act of 1930 (19 U. S. C. §1001, par. 1105 (a)), as amended by the trade agreement with the United Kingdom, 74 Treas. Dec. 253, T. D. 49753, the wool rags being assessed at 9 cents per pound and the wool thread or yarn waste at 15 cents per pound. The remaining 50 bales were assessed at the 15 cents per pound rate for wool thread or yarn waste in said paragraph 1105 (a), as amended. In applying such assessment to the contents of the 50 bales, the collector invoked the provisions of paragraph 1103 of the Tariff Act of 1930 (19 U. S. C. §1001, par. 1103), which read as follows:

PAR. 1103. If any bale or package contains wools, hairs, wool wastes, or wool waste material, subject to different rates of duty, the highest rate applicable to any part shall apply to the entire contents of such bale or package, except as provided in paragraphs 1101 and 1102.

Plaintiff does not dispute the action of the collector as he classified the two kinds of merchandise found in the bale that was the subject of official examination. The protest is directed against the classification of the contents of the remaining 50 bales, the contention being that all

of the merchandise therein consisted of wool rags, dutiable as such under paragraph 1105 (a), as amended, *supra*.

Plaintiff's sole witness was the comptroller of the Atlas Waste Manufacturing Co., the importing corporation, manufacturers of reprocessed wool fibers. During his 20 years' experience, the witness purchased, sold, examined, and segregated wool rags and wool wastes.

The shipment in question was entered for consumption on July 2, 1946, and received at the importer's warehouse 6 days later, when the witness saw it. Bale No. 28 was ordered to the appraiser's stores for examination, and the remaining 50 bales were held at the importer's warehouse. The contents of said bale No. 28 were segregated by the witness under customs supervision and found to contain 334 pounds of wool rags and 46 pounds of wool thread or yarn waste.

The 50 bales that remained in the warehouse were there only 2 or 3 days. The witness inspected their contents and found them to be wool rags, recognized as "sweater stock," with some rayon and cotton fibers. He saw no wool thread or yarn waste. Immediately after this inspection, the contents of the entire 50 bales were carbonized for removal of vegetable content, i. e., cotton and rayon fibers. The process resulted in shrinkage of 34.8 per centum, and because the importation did not agree with the original sample, which showed "no cotton, or rayon, or any vegetable content," the foreign shipper granted an allowance of 17 per centum to the importer.

Following the official examination of bale No. 28, and on July 19, 1946, request was received from the customs officials for further examination of 5 bales, Nos. 9, 19, 39, 49, and 51. Compliance with such request was impossible because at that time the merchandise, having been carbonized, was not in its original packages. Any wool threads or yarn that might be present would appear before carbonization. Thereafter, such material would have disintegrated.

Wool rags and wool thread or yarn waste are two entirely different classes of merchandise, easily distinguishable and readily segregable. Physical examination of the present importation to determine the quantities of each would take approximately 2 hours. In making such determination, which is largely the result of visual observation, the top of the bale would be ripped open, exposing the contents, and by loosening the material through handling "you can fairly readily tell the content of wool rags and wool thread waste in the bale within one or two per cent." Inspection of the 50 bales in question by the witness was made solely for the presence of vegetable content. He did not look for wool threads or yarn. His exact language is: "No, I didn't look for threads or yarn. I was merely interested in the vegetable content."

It is not unusual for the contents of 1 bale to be different from all others in a particular shipment, "quite often due to the carelessness in the baling."

Defendant's witness was the customs examiner who advisorily classified the present merchandise. Upon examination of bale No. 28, he found wool thread or yarn waste throughout various parts thereof. In order to get a better knowledge of the entire importation, redelivery was requested of five more bales, the numbers of which were selected at random, and when the importer did not honor the requisition, the conclusion was drawn that the remaining 50 bales contained wool rags and wool thread or yarn waste, commingled.

Counsel for plaintiff, urging the sufficiency of plaintiff's testimony to establish the alleged claim, argues in his reply brief, that "It becomes clear from a consideration of the witness' qualifications and experience, coupled with the dissimilarity in appearance of wool rags waste and wool thread or yarn waste, that even without looking for it he would have seen any thread waste within the bales examined by him had such class of waste been in fact present."

We are not willing to so construe the proof before us. On the contrary, it is fair to expect that the witness' broad experience, coupled with knowledge that the shipment in question was inferior to the representative sample, would dictate a very careful and thorough examination of the bales in warehouse for a full and complete ascertainment of their contents. The witness' admission that he did not look for wool thread or yarn waste cannot be ignored. It contributes strongly to our conclusion that plaintiff's proof is insufficient to establish as matter of fact that the 50 bales under consideration contained only wool rags, without any wool thread or yarn waste commingled therewith.

*Downing Co.* v. *United States*, 12 Ct. Cust. Appls. 391, T. D. 40582, concerned a mixture of two or more wool wastes, and held the provisions of paragraph 1103 of the Tariff Act of 1922 (prototype of paragraph 1103 of the Tariff Act of 1930) to be controlling. In referring thereto, the court said that "the statute mandatorily provides that the importer of mixed wools or wool wastes must enter his goods at the particular rate applicable to each portion thereof. If he does this, the spirit of the law has been complied with. If he does not, he has impliedly committed a fraud upon the Government and must pay the highest rate which may be imposed upon any portion of his importation."

The construction announced in the *Downing Co.* case, *supra*, was followed in *United States* v. *James G. Kitchen & Co.*, 17 C. C. P. A. 265, T. D. 43688. There, the importation consisted of a mixture of wools, each bale containing between 3 to 10 per centum of pure Eng-

lish wool and from 90 to 97 per centum of Scotch black-faced wool. In applying the provisions of said paragraph 1103 of the Tariff Act of 1922, the court said:

* * * The provisions are not ambiguous. They have special reference to bales or packages containing wools subject to different rates of duty. If a bale or package contains such mixed wools, the highest rate applicable to any of such wools shall apply to the entire contents of the bale or package, when the entered rate or rates are lower than those applicable. There is nothing to indicate that the Congress intended to restrict the operation of the paragraph to improved wools. The mere fact that the mixed wool is of no greater value for carpet purposes than "Scotch haslock" does not affect the situation. The imported bales contained wools subject to different rates of duty. The importer entered all of the wool at the rate applicable only to the so-called "Scotch haslock." As this rate of duty is lower than that applicable to the pure English wool, the entire importation is dutiable, by virtue of the provisions of paragraph 1103, at the higher rate provided in paragraph 1102.

Other cases cited by plaintiff in no way relate to the provisions of paragraph 1103, *supra*, and therefore are not pertinent to this discussion. *United States* v. *Swift & Co.*, 14 Ct. Cust. Appls. 222, T. D. 41706; *United States* v. *M. Lobsitz*, 16 Ct. Cust. Appls. 475, T. D. 43213; and *P. Silverman & Son* v. *United States*, 27 C. C. P. A. 324, C. A. D. 107.

The *Swift & Co.* case, *supra*, concerned an importation consisting of all grades of tankage, mixed, for use in the manufacture of stock and poultry feed. The product was an unsegregable commingled mixture and was therefore held to be classifiable as though composed entirely of the highest grade.

In the *Lobsitz* case, *supra*, the merchandise was found to consist of a mixture of wool thread waste and artificial silk waste, together with a small quantity of oil. Being a mixture of wool thread waste and other products not wool waste, the provisions of section 507 of the Tariff Act of 1922, relating to commingled merchandise, and not paragraph 1105 of said act, were held to apply. The *Downing* case, *supra*, was distinguished.

The issue in the *Silverman & Son* case, *supra*, was confined solely to the question whether the imported "Old Woolen Dryer Felt Waste" was wool waste. No question as to mixed or commingled merchandise was presented.

Plaintiff's contention that paragraph 1103 has no application herein is based on the assumption that the testimony satisfactorily shows that the bales in dispute consist entirely of wool rags. Counsel, in his brief, presents the point this way:

On its face the force of this paragraph [paragraph 1103, *supra*] is dependent upon the supposition created by the "if" clause opening the paragraph. If the evidence in the record herein establishes that the 50 bales of the instant importa-*tion did not contain wool waste subject to different rates of duty, and the plaintiff

forcefully contends that the record establishes that fact, but did contain only wool rags waste, subject to one rate of duty, then paragraph 1103 becomes inapplicable. It is submitted that Mr. Gabriel's testimony regarding the contents of the 50 bales in question, which was ascertained by his professional supervisory inspection, destroys not only the presumption of correctness attaching to the Collector's act, but also the inapplicability of the condition precedent created by the "if" clause opening paragraph 1103.

The record, as hereinabove reviewed, does not support the factual foundation upon which plaintiff's case is predicated. The protest is therefore overruled, and the decision of the collector, presumptively correct, is affirmed. Judgment will be rendered accordingly.